IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DAVID D. MORRISON, et.al. )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Vivin Huhn, Director Dept. of Mental Health )<br>Cynthia Hackathorn, SORTS Program Director )<br>Fulton State Hospital, SORTS Program, et.al. )<br>Individually and in their official capacities, )<br>)<br>Defendants | Civil Action No: |

## PETITION FOR INTERVENTION AND RELIEF

COMES NOW Plaintiff and files her[1] Petition for Intervention and Relief in regards to Defendants Vivin Huhn, Cynthia Hackathorn, and Fulton State Hospital, SORTS, et.al.

I.  **Introduction**

David D. Morrison[2], is a committed resident in the Fulton State Hospital – Sex Offender Rehabilitation Treatment Services facility brings her action under 42 U.S.C. § 1983. Plaintiff alleges while being treated various constitutional rights have been violated by the Defendants; namely, the constitutional rights of Equal Protection and Due Process both under the 14th Amendments. As more will be fully set forth, Plaintiff's Petition for Intervention and Relief should be granted, as Plaintiff has made out plausible allegations of the Defendants' actions.

---

[1] Plaintiff(s) is a MTF transgender. Within this document and subsequent filings and pleadings Plaintiff(s) will refer to herself in the feminine terms. Plaintiff(s) finds the use of masculine terms denigrating and belittling. Furthermore, The World Professional Association for Transgender Health believes that "male-calling" is hurtful, serves no purpose, and is in appropriate in communicating with transgender.

[2] As noted in the footnote above, Plaintiff(s) will refer to herself with feminine pronouns, as that is what she is most comfortable. Plaintiff(s) asks the Court and Defendants' counsel to take this into consideration.

1

## II. Discussion

Ms. Morrison suffers from gender disphoria. Gender disphoria is listed in the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition (DSM-V) as a major mental illness and characterized by a marked incongruence between one's experienced/expressed gender and assigned gender at birth. Gender dysphoria involves a persistent physical and emotional discomfort with one's biological sex. Left untreated, that discomfort can become so painful that individuals consider or attempt suicide, self-castration, or self-mutilation. The accepted treatment to alleviate these symptoms often involves allowing individual to live as his or her chosen gender, through one or more of the following treatments: changes in gender expression and role; dressing and grooming, and otherwise outwardly presenting in a manner consistent with one's gender identity; hormone therapy; and, in some cases, surgery to change primary and/or secondary sex characteristics.

Ms. Morrison was diagnosed with gender dysphoria several years ago when initially processed into the Department of Mental Health, Ms. Morrison identified as transgender[3]; discussed her medical history, including her diagnosis of gender dysphoria and subsequent attempts to functionally adapt within the realms of mental health. The lack of response and continued placement into male dominated living environments had profound physical and emotional impact on Ms. Morrison.

Experts in the field of sexual offending have consistently emphasized that though gender dysphoria is not the cause of such offenses, it can factor in with those suffering from it. Part of successful therapeutic process comprises living "true" to oneself, without the facades of normalcy most offenders use in their criminal behaviors. This included Plaintiff's inclination to hide her true self from society, which she used as a tool in offending. In addition, the "Good Life" therapeutic module clarifies a

---

[3] Definition: World Professional Association for Transgender Health, *Standards of Care for the health of Transsexual, Transgender, and Gender Nonconforming People* 9-10 (7th ed. 2011) available at http://admin.associationsonlne.com/upload_files/140/files/standards%20of%20Care%20V7%20-%202011%20WPATH.pdf).

2

component of offending is an offender's inability to accept, or incorporate for numerous reasons, the actualities of their life, thus seeking temporary relief in any number of maladaptive behaviors. Plaintiff has consistently declared that her pedophilia, and subsequent criminal acts, were not caused by the transgender condition, but the condition did contribute towards an overall discomfort and anxiety in social interactions and lifestyle choices as she felt compelled to hide her reality. Hiding her transgender state from others only brought further unease. The therapeutic community has continually supported Ms. Morrison in her choice to live without façades in order to decrease the potential in re-offending, however, that is as far as the support has materialized. Adaptations, aside from pronoun use, have not solidified within the SORTS program.

### III. Standard of Review

"A complaint should not be dismissed for failure to state a claim unless is appears beyond doubt that the Plaintiff can prove no set of facts of her claim which would entitle her to relief. **Conley v. Gibson**, 355 U.S. 41. In reviewing the petition," the court must consider all facts in the complaint to be true and should construe all allegations and reasonable inferences in the light most favorable to the Plaintiff." *Knapp v. Hanson*, 183 F.3d 786, 788 (8th Cir. 1990).

### IV. Claim

Plaintiff asserts a claim against the Defendants in both their official and individual capacities. As set forth below, Plaintiff pleads allegations that are plausible and above mere speculation. Supervisors and upper management are ultimately responsible insuring acceptable standards of care is offered to all patients in regards to fair treatment within the therapeutic community. It is not the responsibility of the Plaintiff to inform supervisory staff, not on the SORTS campus, or elsewhere, of the obligatory acceptable standards. Defendants Huhn, Hackathorn, and Fulton State Hospital – SORTS, are ultimately

3

responsible in the acceptable standards in the appropriate treatment of transgender patients, as they are Director of Missouri Department of Mental Health, SORTS Executive Program Director, and Fulton State Hospital Supervisory-Administrative Staff. If policies did exist within the Department of Mental health regarding the treatment of transgender patients, it has not been adhered to at the SORTS Fulton State Hospital facility, thus a violation by Huhn, Hackathorn, Fulton State Hospital, SORTS program.

Failure to provide individualized and appropriate therapy and / or medical care for residents suffering from gender dysphoria violates the Eighth Amendment's prohibition on cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Kothmann v. Rosario*, 558 F. App'x 907,910 (11th Cir. 2014); *Fields v. Smith*, 653 F.3d 550, 554-55 (7th Cir. 2011); *Lynch v. Lewis*, No. 7:14-CV-24, 2014 WL 1813725, at *2 (M.D. Ga. May 7, 2014).

## V.  Complaint

Plaintiff, **David D. Morrison**, alleges that the above defendants failed to provide appropriate individualized therapeutic process and housing considerations in regards to the Plaintiff's transgender status, as well as other extenuating circumstances as described further on. As set forth below, Plaintiff has plead allegations that are plausible and above mere speculation. Supervisors and upper management are ultimately responsible insuring that acceptable standards of care is offered to all patients in regards fair treatment within the therapeutic community. It is not the responsibility of the Plaintiff to inform supervisory staff, not on the SORTS campus, or elsewhere, of the obligatory acceptable standards. Defendants Huhn, Hackathorn, and Fulton State Hospital are ultimately responsible for the acceptable standards in the treatment of transgender patients, as they are Director, Program Director, and Fulton State Hospital Supervisory-Administrative Staff. If policies did exist within the Department of Mental Health regarding the treatment of transgender patients, it has not been

4

adhered to at the SORTS facility located within Fulton State Hospital, thus a violation by Huhn, Hackathorn, and Fulton State Hospital.

On the onset, the United Sates "[c]onstitution promises liberty to all within its reach, a liberty that includes specific rights that allows persons, within a lawful realm, to define and express their identity. *Obergerfell v. Hodges*, 135 S. Ct. 2584, 2593 (2015). The right to defines one's own identity in a way that they are comfortable with must be respected by government officials. Identity liberty is more than simply identifying oneself as a specific gender, religion, race, etc... It is the ability to live comfortably in such a manner as reflects that identity without fear of restraints, verbal of physical abuses, retaliation, or any other conditions that would create undue stress or compromise that individual's right to exist treated equally as all others.

In order to establish that Defendants are liable for their conduct, and the conduct they authorize their subordinates to carry out, the 8th Circuit has established a four factor test determining whether a supervisor is liable. Those factors are, the supervisor "(1) has notice of a pattern of unconstitutional acts committed by subordinates'; (2) [was] deliberately indifferent to or tacitly authorized those acts; (3) failed to take 'sufficient remedial action'; (4) proximately causing injury to [Plaintiff]." *A.J. ex rel Dixox v. Tanksley*, 2014 WL 1648790 (E.D. Mo. 2014) at 10 (citing *Livers v. Schenck*, 700 F.3d 340, 356, (8th Cir 2012.

The following named Defendants, Huhn, Hackathorn, and Fulton State Hospital – SORTS, have known David D. Morrison, or of her transgender condition, as cited, since 2015. This is demonstrated by the annual court reports[4] filed by SORTS regarding her therapeutic process, which clearly identifies her as being transgender, thus each of them had been on fair notice. Plaintiff's condition was something that was not dreamt up overnight, jotted down, and submitted the following day for attention. Plaintiff has struggled with this issue, at the hands of others, well documented for three years. Yet, Defendants

---

[4] Plaintiff(s) understands that she cannot attach extrinsic documents to support this motion. At trial Plaintiff(s) will submit these documents, plus additional ones, to prove that the Defendants have discriminated against her.

5

have placed her in conditions that are unacceptable towards the appropriate housing and therapeutic care of transgendered individuals. See *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993).

Even with the fair notice of Plaintiff's MTF transgender condition, Defendants failed to establish policies that allowed, permitted, or otherwise authorized for Plaintiff to live as a MTF Transgender, and subsequently failed to allow for an adaptive environment or allowances for individualized identity. She has been subjected to humiliation by both SORTS-Fulton residents and staff. Each time Plaintiff informed Defendants or their subordinates, they took no action to stop, or otherwise intervene from the given situation(s). Plaintiff was instead instructed to take the issue to her process group, speak to the Treatment Team about it, file a grievance, or submit a Team Request, often used scapegoat instructions when Defendants, or their subordinates, are unwilling or incapable of assisting a resident. Furthermore, the following named Defendants, Huhn, Hackathorn, and Fulton State Hospital – SORTS, have known about these actions, by ways of journals, daily self-monitoring logs, that addressed these problems, group progress notes, inter-office communications, internal grievances, and treatment team meetings. Even being equipped with knowledge Defendants failed to adjust, create, modify, and rid policies that allowed for the unconstitutional acts, discrimination, and disregard for a MTF transgender individual. To further compound this thorny issue, each time when Plaintiff would report her complaints, Defendants, as well as a failures to respond from the offices of the Client Advocates, failed to investigate the complaints, failed to correct staff members or residents in question. They simply showed an indifferent and compassionless regard to Plaintiff and her rights. (See *Nelson v. Schuffman*, 603 F.3f 439, 446 (8th Cir. 2010); *King v. Barton*, 455 Fed. App. 709, 710-11 (8th Cir. 2012) (unpublished) where SORTS showed deliberate indifference to SORTS residents and their right to be protected and free from physical harm.)

When Plaintiff reported her complaints Defendants did nothing but create an atmosphere where Plaintiff faced emotional distress and humiliation, for bringing these issues to the forefront. *Skinner v. Uphoff*, 234 F.Supp.2d 1208, 1215-1216 (D.Wyo 2002) (failure to investigate assaults about

6

misconduct constituted deliberate indifference.) (In these circumstances, failure to intervene to adopt acceptable standards of transgender care is equally harmful due to the continual emotional damages, thus deliberate indifference.) Any concerns brought forward by the Plaintiff where systematically disregarded as inconsequential, or situations where no policies had been established.

As it relates to Defendant Huhn, as director of the Department of Mental Health, it is her duty to insure, by Missouri law, unconditionally that individuals committed to the Department of Mental Health are treated in the following, from the Consumers' Rights as designated by the General Assembly of Missouri: To humane care and treatment. To be treated with dignity as a human being. To safe and sanitary housing. To be free from verbal, physical, and sexual assault. However, the facts demonstrated[5] in this petition and complaint shows that defendants Huhn, Hackathorn, and the Fulton State Hospital have failed in their duty to insure Plaintiff Morrison was protected by these rights for those committed within the Missouri department of Mental Health. This included a gross regard for Plaintiff's participation in the therapeutic process with staff and residents educated on transgender issues, being forced to participate, often under duress, in group settings that were and remain wholly male oriented, outside the Plaintiff and her roommate, and not considered the smallest for material items that might support Plaintiff's gender identity.[6]

Furthermore, Plaintiff has attempted, numerous times, to speak directly with defendants, or representatives thereof, concerning these issues, however, these supervisors did not address problematic situations, nor have there been any, known to the Plaintiff, follow-up discussions or meetings. In one problematic area, Plaintiff has objected to having to use a restroom facility where men can easily see Plaintiff using the toilets, with little or no regard to personal privacy. This issue was disregarded by facility administrative staff as being inconsequential and was dismissed without resolve.

---

[5] Plaintiff(s) will be able to demonstrate additional facts about gender identity discrimination from all named defendants through formal discovery.

[6] Though allowances have been made for limited feminine clothing articles, no further considerations for hygiene, cosmetic, or environmental adaptions have been made.

7

Defendants have asserted that transgendered residents will be housed in added segregated environs in the future, however, after several years of this very same rhetoric being offered transgendered are still being housed in the male dominated environment, at least within the SORTS-Fulton program.[7] These are but two examples where Defendants have offered Plaintiff conciliatory promises, apparently with no intention of providing what was specified materially, housing, or therapeutically. Thus, in accordance with Missouri law, Defendants failed to evaluate, treat, and habilitate Plaintiff in the least-restrictive environment as promulgated by Missouri Law.

Because of the lack of professional intercession, Plaintiff has suffered and continues to suffer embarrassment, alienation, disregard to the nationally recognized standards for the fair treatment of transgender, based on the Defendants' action not providing her with appropriate or unbiased treatment.

Defendants cannot, by any mean or way, argue that they did not have fair notice of their unconstitutional acts against Plaintiff. Plaintiff, as noted many times above[8], took her complaints to treatment team meetings, progress group notes, and attempted to speak to leadership about her condition. Plaintiff made every attempt that she knew how to resolve this problem first before bringing into Court; however, as shown above and will be shown, Defendants were unyielding, unwilling to listen, and seemingly indifferent.

Because the right to equal protection and the right to fair and proper medical or therapeutic was clearly established prior to the filing of this complaint, defendants are not entitled to qualified immunity. As noted above, Plaintiff has shown that Defendants knew that the nationally recognized standards for transgender care weren't being met, thus creating an environment that remains a

---

[7] Administration in the SORTS program have continually claimed arrangements are being made, however, continue to systematically reject Plaintiff's requests for an open meeting to discuss these plans.
[8] Plaintiff has a significant "paper trail" available to demonstrate these efforts to the court.

8

detriment to the Plaintiff's therapeutic process. They have made professional choices that are not acceptable to should be held accountable.

Furthermore, Plaintiff, who is transgender, is part of a group or a category that has been treated unequal compared to other individuals who are housed at SORTS-Fulton. As noted above, here is significant difference between the way that Defendants treat, care for, and provide opportunities, for other non-transgender residents at SORT-Fulton, who are under their custody and control. This is reflected in the manner that the Plaintiff's requests for intervention were summarily dismissed and ensuing bias treatment for having been vocal about these situations.[9] There is no reasonably conceivable state of facts, or rational basis, for the discrimination or mistreatment toward Plaintiff. (see *Lewis v. Jacks*, 486 F.3d, 1025, 1028 (8thCir 2008) ("Discriminatory purpose can be proved with various kinds of direct and circumstantial evidence but is most proved with evidence that similarly situated inmates[10] were treated differently.") In applying discriminatory practices to Plaintiff, the Defendants have violated her right to Equal Protection as guaranteed under the 14th Amendment tot eh U.S. Constitution. It is well established, and has been prior to, the filing of this complaint that government officials cannot show discrimination towards Plaintiff[11] for any purpose.

Once again, Plaintiff's condition is not something she thought up overnight and the next day started to adhere to it. It is a lifelong struggle. It is the core to her personality. Claims are documented within her medical file, progress notes, treatment notes, annual court reports filed by the facilities, and others, to her county of commitment, and internal documents that she has filed seeking relief.

## VI. Conclusion

---

[9] It should be noted that the SORTS program, in general, has taken vindictive actions, numerous times, against residents who have challenged them in court for any reason.

[10] It has never been determined whether those in custody of the SORTS programs are fully in the Department of Mental Health, or the Department of Corrections, systems, as both departments have active participation in each resident's custodial care.

[11] Statistically, the general population of those committed to SVP programs are 55 to 65% gay, bisexual, or transgender. An inordinate leaning towards selective discriminatory practices in sentencing and commitment in comparison to the higher percentage of heterosexuals convicted of sex offenses. (Toshio Meronek, reporter for *The Nation*, and *Truthout*. Erica Meiners, Research Professor at Northeastern Illinois University.)

Defendants violated, and continue to violate, Plaintiff's Fourteenth Amendment right when they fail to provide gender identity appropriate treatment, security, and equal protection within an environment that is free from bias treatment, or other abuses, from both residents and staff members. Because Defendants violated Plaintiff's clearly established constitutional right to protection from bias treatment, or other abuses, from residents and staff who posed a substantial risk of quantifiable harm, environmentally as well as therapeutically, Defendants are not entitled to qualified immunity. Furthermore, because all facts when taken in the light most favorable to Plaintiff, demonstrate that Plaintiff's factual allegations are plausible and above mere speculation.

## VII. Intervention and Relief

Plaintiff Morrison is not seeking financial relief in this cause. Instead, she seeks specific interventions from the Court to establish the facts, and institute standards for the care and treatment of transgendered individuals within the Missouri department of Mental Health, specifically the SORTS programs at the Fulton and Farmington locations. Relief requested as follows:

1. The Court assign an independent monitor, unassociated with the Department of Mental Health or the State of Missouri, to oversee Plaintiff's therapeutic process to insure that possible retaliatory responses from Defendants, or subordinates, brought on by this cause would be recognized.[12] That this monitor be granted open access to all pertinent records. Open communication with Plaintiff Morrison at all times via telephone, videoconference, and mail. Assigned monitor be allowed open inspection rights to Plaintiff's living environment at scheduled intervals if deemed necessary by said monitor.

2. The Department of Mental Health, SORTS programs, follow the standards set forth by the following professional organizations for the treatment and care of transgender patients:

---

[12] The SORTS program has a documented history of retaliatory practices against clients who challenge them in court or don't fully submit to their control.

- **The World Professional Association for Transgender Health**
  Informational services aimed towards use by professional caregivers, therapists, physicians, etc...
  (612) 625-1500 *wpath.org*

- **Southern Arizona Gender Alliance**
  TG and TS education and information.
  *www.Sagatucson.org*

- **Transgender San Francisco**
  Support services and educational material.
  3543 18th Street
  San Francisco, CA 94110
  (415) 839-9448 *www.tgsf.org*

- **Human Rights Campaign Foundation**
  Washington, D.C.
  *www.hrc.org/transgender*

3. Plaintiff, or representative of, allowed immediate access to all records regarding her care, treatment, and therapeutic process. In addition, Plaintiff be granted the right receive copies at the facility's standardized fee of 15¢ per page of any materials she finds pertinent, in a timely manner.[13]

**WHEREFORE**, Plaintiff respectfully requests that the Court accept this cause and move towards resolution, and for any other and further relief this Court deems just and proper under the circumstances. In the alternative, if this Court should want to dismiss the cause, it should give Plaintiff the opportunity to re-plead her claims in an amended complaint.

Respectfully Submitted,

*David D. Morrison*

---

[13] In a previous case filed in in The United States District Court for the
In another case in Eastern District of Missouri, ***Kaprielian v. Stringer*** 4:15-CV-1598, the SORTS-Farmington facility refused to relinquish pertinent records to plaintiff. This created an impossible scenario for Plaintiff Kaprielian to satisfy the Court's requests for corroborating evidence.

11

Case 2:22-cv-04043-SRB   Document 1   Filed 03/22/22   Page 11 of 13

David D. Morrison, Plaintiff
600 East 5th Street
Fulton, MO 65251
(573) 592-2271, 592-2270

David D. Morrison
600 E. 5th St.
Fulton, Mo.
65251



Court Clerk
400 East 9th Street Room 1510
Kansas City, Mo.
64106

